## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

WILLIE J. HARRIS                                                            PLAINTIFF

v.                                                                No. 3:20CV79-NBB-JMV

MARSHAL TURNER, ET AL.                                                      DEFENDANTS

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Willie J. Harris, who

challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison

Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The

plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action

against "[e]very person" who under color of state authority causes the "deprivation of any rights,

privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The defendants[1]

have moved [47], [52] for summary judgment, arguing, *inter* alia, that Mr. Harris has not exhausted

his administrative remedies for his claims. Mr. Harris has responded to the motions, and the matter is

ripe for resolution. For the reasons set forth below, the defendants' motions [47], [52] for summary

judgment will be granted, and the instant case will be dismissed with prejudice for failure to exhaust

administrative remedies.

---

[1] As Mr. Harris' allegations involve two different prisons, the court will refer to two groups of defendants: (1) MDOC defendants (Morris, Flagg, Turner, and Williams), and (2) TCCF defendants (Vergara, Hampton, and Skeen). In this case, all defendants have sought summary judgment for failure to exhaust administrative remedies. Defendant Ricky Scott has not been located to effect service of process; however, where a defending party shows that a plaintiff has no cause of action, the defense also benefits an unserved or defaulting defendant. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).

**Factual Allegations**

When Willie Harris filed his complaint, he was an inmate in the custody of the Mississippi Department of Corrections ("MDOC") Compl., [1] at 2. At all times relevant to this suit, Mr. Harris was incarcerated either at the Mississippi State Penitentiary ("MSP") located in Sunflower County, Mississippi, or the Tallahatchie County Correctional Facility ("TCCF"). *Id.*

Mr. Harris was transferred for nine days to Unit 32 of the MSP, which had previously been closed. According to Mr. Harris, Unit 32 contained black mold, mildew, corrosion, feces – and did not have heat, running water, electricity, or cleaning supplies. Further, he alleges he only received cold meals for three days – and was deprived of bottled water for one day, a blanket for one night, tissue for two days, and toothbrushes, toothpaste, and a mattress for three days. Doc. [1] at 6. Mr. Harris alleges that Defendant Verlena Flagg, after restoring water service, only allowed it to be turned on intermittently so that toilets could be operated. He also alleges the MDOC Defendants violated his constitutional rights by depriving him of access to radio, television, telephones, newspapers, legal services, and mail service for the entirety of his stay nine-day in Unit 32. Doc [1] at 8.

After nine days in Unit 32, Mr. Harris was transferred to the Tallahatchie County Correctional Facility. *Id.* The events described in the complaint took place as MSP dealt with gang riots earlier in January, which caused the governor to order Unit 29, in which Harris had been housed, to be closed.

Mr. Harris filed a grievance in MSP's Administrative Remedy Program, Grievance No. MSP-20-209 on January 19, 2020, attached to the MDOC Defendants' motion as Exhibit "A." See Doc. [52-1]. The grievance was rejected. Doc. [1] at 5. According to the Affidavit of Paul R. Pennington, the grievance was rejected because it requested relief beyond the power of the ARP program to grant

- 2 -

(money and the termination of involved staff members).  Mr. Harris never re-submitted a compliant grievance.  Doc. [52-1] at 1.

Mr. Harris was temporarily housed at the Tallahatchie County Correctional Facility ("TCCF") under a contract between MDOC and TCCF, which is owned and operated by non-party CoreCivic, Inc. ("CoreCivic").  He was transferred to TCCF from the Mississippi State Penitentiary at Parchman ("Parchman") in January 2020, after gang violence and riots led to MSP's partial shut down by the State.  Mr. Harris was transferred back to MDOC custody in late October 2020.  The remaining causes of action as to the TCCF Defendants are:  (1) as to Defendant Warden Vergara, unconstitutionally harsh general conditions of confinement; and (2) as to Defendants Corrections Counselor Hampton and Case Manager Skeen, denial of right to free exercise of religion and mail tampering.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1).  "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).  After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc.,

477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### Failure to Exhaust Administrative Remedies

The documents the parties have provided reveal that the plaintiff did not exhaust the prison grievance process before filing the instant suit as to either group of defendants. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its

- 4 -

requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to be an effective tool to help weed out the frivolous claims from the colorable ones:

> Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts. *Woodford v. Ngo*, 548 U.S. 81, 94, n. 4, 126 S.Ct. 2378 (2006) (slip op., at 12, n.4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of non-meritorious claims does not submerge and effectively preclude consideration of the allegations with merit. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).
>
> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.

*Jones v. Bock*, 549 U.S. 199, 203 (2007).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict

approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules").  Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process."  *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012).  "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact."  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury."  *Id*. at 272.  The Supreme Court has also recognized the need for a prisoner to face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

### Failure to Exhaust the MDOC Grievance Procedure

Mr. Harris never exhausted the MDOC grievance procedure.  Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an

administrative review procedure at each of its correctional facilities. Under this statutory authority, the Mississippi Department of Corrections has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. Nov. 6, 2000). On September 19, 2010, the ARP process was changed from three steps to two. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether or not to accept it into the ARP process. *Id*. The screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam)

(not reported) (upholding Louisiana initial screening provision of prison grievance process).

However, if the defects in the original grievance were minor ("technical" or "matters of form")

an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have
> five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3,

2019)).

If accepted, the grievance is forwarded to the appropriate official who then issues a First

Step Response to the complaining inmate. *Howard, supra.* If the inmate is unsatisfied with the

first response, he may continue to the Second Step by completing an appropriate ARP form and

sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden or Community

Corrections Director will then issue a final ruling, or Second Step Response – which completes

the ARP process. *Id.* Issuance of the Second Step Response is the only way to complete the

grievance process. If the inmate is unsatisfied with that response, he may file suit in state or

federal court. *Id.*

Mr. Harris filed grievance regarding the alleged incident on January 19, 2020. Doc. [1] at 5

(Grievance MSP-20-209). He states that his grievance was rejected without cause. *Id.* That

grievance was, however, rejected for requesting relief that the Administrative Remedy Program was

unable to grant. Doc. [52-1] at 1. Mr. Harris received and signed for his notice of this rejection and

the reason for it on February 13, 2020, along with a copy of his grievance letter that highlighted the

non-compliant portion of the grievance, which demanded that that officers responsible "… be

terminated immediately for the crimes they have committed against me. I further request that I be

fully compensated for all my personal property that was destroyed, and for the physical abuse, pain

- 8 -

and suffering that has been inflicted upon me." *Id*. at 6. Harris did not resubmit a compliant grievance. *Id*. at 1.

The MDOC ARP requires inmates to submit grievance letters that comply with MDOC policy. The Inmate Handbook states that the program will screen requests before assignment to the first step of the process, and that requests that are beyond the power of the ARP program to grant will be rejected. Doc. [52-1] at Ch. VIII(V)(A-E). Further, the Inmate Handbook states that the grievance will be returned with a form stating the reasons for rejection. *Id*. at Ch. VIII(VI). Mr. Harris received such a notice explaining the technical reasons for the rejection of his procedurally defective grievance. Doc [52-1] at 3-6. Mr. Harris had access to MDOC's grievance policy and received notice of the deficiencies in his grievance letter that needed to be corrected for resubmission, but he failed to resubmit a grievance to the ARP program. *Id*. at 1. As such, he did not complete the requirements of the Administrative Remedy Program and thus exhaust his administrative remedies as required by the PLRA.

**The MDOC Grievance Procedure was "Available" to Mr. Harris**

In his complaint, Harris argues: "The result[] was Mr. Richie Pennington rejected my grievance without cause – as usual when he is trying by all means to prevent my claims from being heard by the Courts." Doc. [1] at 8. Mr. Harris thus argues that Mr. Pennington's reason for the rejection was a pretext to render the process little more than a dead end for those requesting officer discipline or financial compensation.

The actions of prison officials may render an administrative remedy unavailable. *Ross v. Blake*, 136 S.CT. 1850, 1858, 195 L.Ed.2d. 117, 84 USLW 4352 (2016). First, prison officials may thwart inmates from taking advantage of a process through machination, misrepresentation, or intimidation. *Id*. at 1860. The regulations might also be so opaque that they are practically incapable

- 9 -

of use. *Id.* at 1858-9. Mr. Harris has not alleged that the process is too confusing or that MDOC personnel made any misrepresentations to him. *See* Doc. [1], generally.

Finally, a grievance process may be rendered unavailable if it operates as a simple dead end, despite the promises of regulations or guidance materials. *Ross* at 1858. A prisoner cannot, however, satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford* at 83-84. Proper exhaustion, including compliance with the prison's procedural rules, is necessary because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings. *Id.* at 90. Mr. Harris offers no more than a vague, conclusory allegation that ARP program director Richard Pennington rejects procedurally compliant grievances to prevent inmates from seeking judicial review. Doc. [1] at 5.

He has not shown that rejection of his grievance as non-compliant for demanding officer discipline and monetary compensation served as a dead end. He filed a procedurally defective grievance and received a letter explaining precisely which rules he violated – and highlighting the defective portion of his grievance. Doc. [52-1] at 6. He has provided nothing to the court in support of his contention that, had he refiled a procedurally compliant grievance, it too would have been rejected. Instead, he simply chose not to correct and resubmit his grievance and thus failed to exhaust his available administrative remedies.

Indeed, the Supreme Court has determined that the PLRA's requirement that an inmate exhaust "such administrative remedies as are available" applies *even when the grievance procedure cannot provide the specific relief requested. Booth v. Churner*, 531 U.S. 731, 532 S.Ct.1819, 149 L.E.2d. 958 (2001). In *Booth*, the sole relief requested was monetary damages, and the Pennsylvania Department of Corrections' grievance system had no provision for money damages. The inmate

- 10 -

asserted that exhaustion was not required because prison officials could not provide the only relief he requested. *Id*. at 736.

The Supreme Court determined the congressional objective of the PLRA requiring the exhaustion of "all such remedies as are available" lay not only with the availability of a remedy, but also in the requirement for "exhaustion." *Id*. at. 740. Only a process can be exhausted, it made little sense that a remedy could be exhausted. *Id*. Further, the Court noted that Congress had removed language from the statute requiring that the available remedy be effective in response to a ruling by the Court two years earlier that exhaustion was not required where only money damages were sought. *Id. citing McCarthy v. Madigan*, 503 U.S. 140, 112 S. Ct. 1081, 117 L.Ed. 291 (1992).

Mr. Harris asked the ARP program to terminate all the officers responsible and for financial compensation, neither of which falls within the Administrative Remedy Program's authority to grant. Doc. [52-1] at 6. MDOC officials told Harris the reason for the rejection *and* highlighted the non-compliant language of grievance. In other words, the officials gave Mr. Harris a guide for correcting his defective grievance. He needed only to resubmit a compliant grievance to proceed to the first step of administrative review, and, ultimately, exhaust the grievance process.

However, rather than follow proper procedure and file a new ARP that follows the ARP program's rules, Mr. Harris abandoned his grievance and proceeded directly to federal court. In doing so, he deprived prison officials the opportunity to hear his grievance and provide a remedy within their power. The dispute may thus have been resolved – as contemplated by the PLRA. His decision to forego revising his grievance deprived him of that opportunity.

**Failure to Exhaust the TCCF Grievance Procedure**

TCCF has its own grievance procedure inmates must exhaust before seeking redress in federal court. When the MDOC inmates, including Mr. Harris, were transferred to TCCF, the

- 11 -

contract between CoreCivic/TCCF and MDOC governed the policies that would apply to those inmates.  *See* Declaration of Rafael Vergara ("Vergara Dec."), *attached to* TCCF Motion [47] Ex. 3 at ¶¶ 2-3.  As a practical matter, to the extent facility contracts are silent as to any specific issue or policy, CoreCivic's own policies govern.  *Id.* at ¶ 2.  As the TCCF/MDOC contract is general in nature, CoreCivic policies apply to Mr. Harris' specific claims here.  *Id.* at ¶ 3.

TCCF has an administrative grievance system that enables inmates to seek redress for issues relating to the conditions of their confinement.  *See* Declaration of Grievance Coordinator Shirquita Walker ("Walker Dec."), attached as TCCF Motion Ex. 2 at ¶ 2.  Under Policy 14-05, Inmate/Resident Grievance Procedures, internal grievances filed by inmates at TCCF are subject to a three-step administrative process:  first level informal resolution, second level formal grievance, and third level appeal.  *Id.* at ¶¶ 2-4.  Though Mr. Harris attached to his Complaint various TCCF "inmate request" forms, they are not grievances.  *See* Doc. No. 5 at Ex. M, N, and Q.   "*Administrative law [requires] proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly* (so that the agency addresses the issues on the merits)"  *Woodford*, 548 U.S. at 90 (emphasis added).

Mr. Harris filed the instant lawsuit on March 11, 2020.  *See* Doc. No. 1.  Before that date, he filed *no* administrative grievances.  Walker Dec. (Motion Ex. 2) at ¶ 6.  As such, he failed to exhaust his administrative remedies before filing this action, in violation of the PLRA, and his claims against the TCCF defendants must be dismissed for that reason.

**Conclusion**

For the reasons set forth above, the defendants' motions [47], [52] for summary judgment will be granted, and the instant case will be dismissed for failure to exhaust administrative remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 21st day of April, 2021.

/s/ Neal Biggers

NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE

- 13 -